RECORD NO. 15-4142

In The

# United States Court of Appeals
## For The Fourth Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

### JERMAINE WHITAKER,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

_____

## BRIEF OF APPELLANT

_____

**Ross Hall Richardson**
**Executive Director**
**FEDERAL DEFENDERS OF**
  **WESTERN NORTH CAROLINA, INC.**

**Ann L. Hester**
**FEDERAL DEFENDERS OF**
  **WESTERN NORTH CAROLINA, INC.**
**129 West Trade Street, Suite 300**
**Charlotte, North Carolina 28202**
**(704) 372-9870**

*Counsel for Appellant*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................ii

JURISDICTIONAL STATEMENT .......................................................................1

STATEMENT OF THE ISSUE ..............................................................................1

STATEMENT OF THE CASE ...............................................................................1

    I.     The Offense Conduct And Charges ............................................1

    II.    PSR Recommendations.................................................................3

    III.   The Sentencing Hearing...............................................................4

SUMMARY OF ARGUMENT...............................................................................8

ARGUMENT ...........................................................................................................9

    The district court procedurally erred at sentencing by applying a four-level enhancement for engaging in the trafficking of firearms under U.S.S.G. § 2K2.1(b)(5), where the government's evidence failed to establish that at the time Whitaker sold guns, he knew or had reason to believe the recipients intended to use or dispose of the firearms unlawfully ...............................................................................................9

    A.    Standard of review ........................................................................9

    B.    The district court clearly erred when it applied the firearms-trafficking enhancement without evidentiary support ...............10

CONCLUSION ......................................................................................................16

REQUEST FOR ORAL ARGUMENT.................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Consolidated Coal Co. v. Local 1643, United Mine Workers of America*,
    48 F.3d 125 (4th Cir. 1995) ...................................................................10

*Gall v. United States*,
    552 U.S. 38 (2007) ...................................................................................9

*In re Agnew*,
    144 F.3d 1013 (7th Cir. 1998) ...............................................................10

*Miller v. Mercy Hosp., Inc.*,
    720 F.2d 356 (4th Cir. 1983) .................................................................10

*Pizzeria Uno Corp. v. Temple*,
    747 F.2d 1522 (4th Cir. 1984) ...............................................................10

*United States v. Allen*,
    446 F.3d 522 (4th Cir. 2006) ...................................................................9

*United States v. Davis*,
    720 F.3d 215 (4th Cir. 2013) .................................................................12

*United States v. Freeman*,
    640 F.3d 180 (6th Cir. 2011) .................................................................14

*United States v. Garcia*,
    635 F.3d 472 (10th Cir. 2011) ...............................................................14

*United States v. Juarez*,
    626 F.3d 246 (5th Cir. 2010) .................................................................14

*United States v. Lynn*,
    592 F.3d 572 (4th Cir. 2010) ...................................................................9

*United States v. Marceau*,
    554 F.3d 24 (1st Cir. 2009) ...................................................................14

*United States v. Martinez-Melgar*,
    591 F.3d 733 (4th Cir. 2010) ...................................................................10

*United States v. Miller*,
    529 F. App'x 331 (4th Cir. 2013)...................................................... 12, 13

*United States v. National Gypsum Co.*,
    333 U.S. 364 (1948) ......................................................................... 9-10

*United States v. Osborne*,
    514 F.3d 377 (4th Cir. 2008) .....................................................................9

*United States v. Pepper*,
    747 F.3d 520 (8th Cir. 2014) ...................................................................14

*United States v. Pineda*,
    770 F.3d 313 (4th Cir. 2014)....................................................... 11, 12, 13

*United States v. Span*,
    No. 14-4655 (4th Cir. Jun. 8, 2014) .......................................................10

*United States v. Wooden*,
    693 F.3d 440 (4th Cir. 2012) ...................................................................10

## STATUTES

18 U.S.C. § 922(g)(1) ...............................................................................1, 2

18 U.S.C. § 3742 ..........................................................................................1

21 U.S.C. § 841 ............................................................................................1

21 U.S.C. § 841(a)(1) ...................................................................................2

21 U.S.C. § 841(b)(1)(C) .............................................................................2

28 U.S.C. § 1291 ..........................................................................................1

## **GUIDELINES**

U.S.S.G. § 2K2.1 ...................................................................................10

U.S.S.G. § 2K2.1(b)(5) ..................................................................*passim*

U.S.S.G. § 2K2.1 cmt. (n.13) ................................................... 4, 8, 11

## JURISDICTIONAL STATEMENT

Jermaine Whitaker appeals from a judgment entered on March 6, 2015, in the United States District Court for the Western District of North Carolina. JA 96. He timely filed a notice of appeal on March 6, 2015. JA 102. This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. The district court had jurisdiction under 21 U.S.C. § 841 and 18 U.S.C. § 922(g)(1).

## STATEMENT OF THE ISSUE

Whether the district court procedurally erred at sentencing by applying a four-level enhancement for engaging in the trafficking of firearms under U.S.S.G. § 2K2.1(b)(5), where the government's evidence failed to establish that at the time Whitaker sold guns, he knew or had reason to believe the recipients intended to use or dispose of the firearms unlawfully.

## STATEMENT OF THE CASE

### I.    The Offense Conduct And Charges

The events that resulted in Jermaine Whitaker's indictment occurred on three different dates in October 2012 and January 2013. JA 104-05.

On October 4, 2012, a confidential informant ("CI"), via phone calls and text messages, set up a drug transaction with Whitaker. JA 104. That same day, Whitaker provided the CI with five samples of heroin weighing a total of .15 grams. *Id.*; JA 121. During the transaction, the CI and Whitaker discussed the prospect of a future gun

transaction and discussed that Whitaker was working on getting pistols and revolvers. *Id.*

Over a week later, on October 12, 2012, the CI arranged a gun purchase with Whitaker. JA 105. Later that day, Whitaker sold the CI two pistols—a Kimber .38 and a Glock .40—and nine rounds of ammunition for $1,100. *Id.*

Three months later, on January 16, 2013, the CI set up another gun purchase with Whitaker. *Id.* This time, an undercover officer accompanied the CI to Whitaker's home and purchased from Whitaker four pistols and 20 rounds of ammunition, which Whitaker delivered in a bag to the undercover car, for a total of $2,100. *Id.*

On May 20, 2014, the federal grand jury in the Western District of North Carolina returned a three-count Indictment. JA 6. Count One charged Whitaker with possessing a detectable amount of heroin with intent to distribute on or about October 4, 2012, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). JA 6. Count Two charged Whitaker with possessing two firearms and nine rounds of ammunition on or about October 12, 2012, after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). JA 6-7. Count Three charged Whitaker with possessing four firearms and 20 rounds of ammunition on or about January 16, 2013, after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). JA 7.

On August 15, 2014, Whitaker pleaded guilty before a magistrate judge to all three counts, without a plea agreement, and the magistrate judge accepted Whitaker's guilty plea. JA 10-23.

## II.    PSR Recommendations

Before the district court sentenced Whitaker, the probation officer submitted a Presentence Investigation Report (PSR) to the court. JA 116. The PSR grouped the three counts for Guideline calculation purposes. JA 121. Because the firearms counts carried the greatest adjusted offense level, Whitaker's Guideline range was based on those counts. JA 122. For each of those counts, the PSR recommended an adjusted offense level of 23, which included a four-level increase under U.S.S.G. § 2K2.1(b)(5) on the grounds that "the defendant was engaged in the trafficking of firearms." *Id.* Combined with a criminal history category of V, that offense level yielded a recommended Guidelines sentencing range of 84-105 months' imprisonment. JA 133.

Whitaker objected to the application of the four-level firearms trafficking enhancement under U.S.S.G. § 2K2.1(b)(5), which increases the sentence "[i]f the defendant engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5) (2014). Application Note 13 explains that the trafficking enhancement applies if the defendant:

> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

3

> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
>
> > (I)  whose possession or receipt of the firearm would be unlawful; or
> >
> > (II)  who intended to use or dispose of the firearm unlawfully.

U.S.S.G. § 2K2.1, cmt. (n.13).

Whitaker did not dispute that he transferred two or more firearms. JA 142. But he objected on the grounds that "[t]he facts do not support Mr. Whitaker having the requisite knowledge or reason to believe that the firearms sold would result in the transport, transfer or disposal of the firearms to an individual 'whose possession or receipt of the firearm would be unlawful' or 'who intended to use or dispose of the firearm unlawfully.'" JA 108. He also objected to certain factual assertions included in the PSR that went beyond the facts stipulated in the factual basis. JA 107-08. Whitaker contended that the correct Guidelines range would be 57-71 months' imprisonment. JA 109. The government responded that the trafficking enhancement was proper because Whitaker had reason to believe he was providing guns to drug traffickers, and "the comments and circumstances surrounding the gun transactions form a basis for Defendant to believe that the recipients of the firearms intended to use or dispose of the firearms unlawfully." JA 113.

## III.  The Sentencing Hearing

At Whitaker's sentencing hearing on February 9, 2015, the government called ATF Special Agent Kevin Kelly to testify about the transactions involving Whitaker.

4

JA 42. Kelly testified that the CI "advised me that he knew of this individual named Jermaine Whitaker and where he resides at and what illegal activities he does such as trafficking in firearms and trafficking in heroin." JA 43. The CI was working with Kelly in an attempt get time off his sentence in a pending criminal case. JA 53. The CI reported that he knew Whitaker because the two had been in state custody together, but Kelly did not verify that information. JA 44. ATF agents never identified Whitaker's purported heroin source, although Whitaker said his source was a cousin in Henderson, North Carolina; their "main point at the time was purchasing firearms." JA 44. Agents never verified that Whitaker even had a cousin in Henderson. JA 52.

Kelly testified that the first meeting with Whitaker, on October 4, 2012, took place at the home of Whitaker's parents on Mathis Drive and was audio recorded. JA 44-46. The meeting was "to purchase firearms and get a sample of heroin." JA 45. Whitaker and the CI discussed firearms via text messaging, and Whitaker asked the CI to erase his text messages about that. JA 45. Whitaker did not have guns during the October 4 meeting, but he and the CI discussed the price of the guns. JA 45. Whitaker and the CI also discussed "what to do with heroin, how much to charge." JA 46. The CI also mentioned that he knew a person who could get pills, but nothing ever came of that discussion. JA 46, 57. During the October 4 meeting, Whitaker and the CI were sitting on a screened-in porch for 30 or 40 minutes and discussed a number of topics. JA 56.

The CI went back to Whitaker's parents' home on October 12, but Whitaker did not have any firearms to sell when the CI arrived. JA 46-47. Whitaker and the CI had to drive in the CI's vehicle to pick up one of the firearms at a house a few miles away from the Mathis Drive home. JA 46. Then, when they returned to the Mathis Drive home, an individual known as Keon ultimately went to get the other firearm, gave it to Whitaker, and Whitaker then gave it to the CI. JA 47. In addition to Whitaker and the CI, two other individuals were present at the house during the transaction. The CI described them as associates in drug dealing and thought that one of them had a pistol in his waistband, but agents were not able to make that determination from the video surveillance. JA 47. In fact, the CI was at Whitaker's house for about an hour and a half, and other people, including family members, came and went during that period. JA 58. Kelly agreed that the scene consisted of people "just hanging around talking during this time period." JA 59.

With respect to the January 16, 2013, gun transaction between Whitaker and an undercover officer, Kelly testified that Task Force Officer Doug Moore reported that he observed Whitaker with an associate and that Moore had a conversation with Whitaker in which he told Whitaker that he was going to "move these guns up north to New York where he's from." JA 49. But Moore never represented to Whitaker that he was a felon or that he intended to transfer the firearms to felons. JA 66. Nor did he say anything about "selling drugs alongside the firearms" or selling drugs at all. JA 67. He simply did not tell Whitaker what he planned to do with the firearms once he took

6

them to New York. JA 67. Kelly testified that "I believe" Whitaker told Moore that he obtains the guns "through individuals that can go to gun shows." JA 50.

Moore also reported having a conversation with Whitaker about Whitaker's source of heroin, and Whitaker said "[h]e wasn't able to get it now." JA 49. This conversation occurred after Moore had paid Whitaker for the firearms. JA 68. Whitaker and Moore also discussed another firearm, a .45 caliber, that Whitaker wanted to sell Moore for approximately $600, and Moore later Googled that firearm and found out its "best price" was $160. JA 49-50. While Whitaker indicated he knew Moore wanted the .45 caliber pistol and ten bundles of heroin, JA 69, that conversation occurred *after* the January 16 firearm transaction was completed. JA 71-72. No deal with a .45 and ten bundles of heroin ever happened. JA 72.

In fact, agents weren't able to undertake any other deal with Whitaker at all. In August 2013, agents attempted another firearm transaction with Whitaker "that didn't go through." JA 51. Agents did not arrest Whitaker until May 2014. JA 65.

After hearing Agent Kelly's testimony, the district court overruled Whitaker's objection to the four-level trafficking enhancement "for all the reasons that are given in the report as well as the testimony offered by the agent. . . . There's plenty here to support it. . . . I think there was enough transactions here and enough said and enough done, drugs involved, and all of that, to support the enhancement in this." JA 78.

7

Consequently, the district court found a total offense level of 23, with a criminal history category of V and a sentencing range of 84 to 105 months. JA 80. After hearing arguments from both counsel and hearing Whitaker's allocution, the district court stated that, if it had not applied the four-level enhancement, it would have sentenced Whitaker to 71 months' imprisonment, the high end of the range that would have applied without the enhancement. JA 90. But because the four levels "is substantial punishment to him," the district court sentenced Whitaker to the low end of the enhanced Guideline range: 84 months' imprisonment. JA 91.

The court entered judgment on March 6, 2015, JA 96, and Whitaker appealed the same day. JA 102.

## SUMMARY OF ARGUMENT

The district court clearly erred when it applied the four-level trafficking enhancement to Whitaker under U.S.S.G. § 2K2.1(b)(5). Because the government did not contend that Whitaker had reason to believe the CI or the undercover officer could not lawfully possess the firearms, that enhancement required the government to prove that Whitaker knew or had reason to know that the recipient of the guns intended to use or dispose of the firearms unlawfully. U.S.S.G. § 2K2.1, cmt. (n.13) (2014). Neither this Court's opinions nor the decisions of other circuits support application of the trafficking enhancement when (1) the only drug transaction between Whitaker and the first gun purchaser was the sale of a small amount of drugs eight days before any gun transaction took place, and no discussion of drugs occurred

8

at the time of the gun transaction; and (2) the second gun purchaser mentioned drugs only after the gun purchase was completed. Nor do any other circumstances surrounding Whitaker's sale of firearms support the trafficking enhancement. This Court should vacate Whitaker's sentence and remand for resentencing.

## **ARGUMENT**

**The district court procedurally erred at sentencing by applying a four-level enhancement for engaging in the trafficking of firearms under U.S.S.G. § 2K2.1(b)(5), where the government's evidence failed to establish that at the time Whitaker sold guns, he knew or had reason to believe the recipients intended to use or dispose of the firearms unlawfully.**

### A.     Standard of review.

This Court reviews sentences for reasonableness, applying an abuse of discretion standard of review. *Gall v. United States*, 552 U.S. 38, 50 (2007). Before reviewing the substantive reasonableness of a sentence, the court "must first ensure that the district court committed no significant procedural error." *Id.* at 51. Failure to correctly calculate the applicable Guidelines range is a significant procedural error. *Id.*; *United States v. Lynn*, 592 F.3d 572, 575 (4th Cir. 2010) (quoting *Gall*, 552 U.S. at 51).

"In assessing whether a sentencing court properly applied the Guidelines, '[this Court reviews] the court's factual findings for clear error and its legal conclusions *de novo*.'" *United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008) (quoting *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006)). A factual finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. National Gypsum Co.*, 333 U.S. 364, 395

(1948). The existence of some evidence in the record does not bar a finding of clear error; clear error exists "'when, even though there is some evidence to support the finding, the reviewing court, on review of the record, is left with a definite and firm conviction that a mistake has been made in the finding.'" *Consolidated Coal Co. v. Local 1643, United Mine Workers of America*, 48 F.3d 125, 128 (4th Cir. 1995) (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1526 (4th Cir. 1984)). "Put another way, clear error occurs when a district court's factual findings 'are against the clear weight of the evidence considered as a whole.'" *United States v. Martinez-Melgar*, 591 F.3d 733 (4th Cir. 2010) (quoting *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir. 1983)); *see also United States v. Span*, No. 14-4655, slip op. at 7-8 (4th Cir. Jun. 8, 2014) (same). Thus, "while clear-error review is 'deferential, it is not toothless.'" *United States v. Wooden*, 693 F.3d 440, 452 (4th Cir. 2012) (quoting *In re Agnew*, 144 F.3d 1013, 1014 (7th Cir. 1998)).

## B.    The district court clearly erred when it applied the firearms-trafficking enhancement without evidentiary support.

Here, the district court based the four-level trafficking enhancement on its finding that "there was enough transactions here and enough said and enough done, drugs involved, and all of that, to support the enhancement in this." JA 78. But the Guidelines require more. For § 2K2.1's trafficking enhancement to apply, the sale of a small amount of drugs to the gun purchaser more than a week before the gun transaction is not enough; rather, the defendant must know or have "reason to believe

10

that [his transfer of firearms] would result in the transport, transfer, or disposal of a firearm to an individual" who could not legally possess it or "who intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1, cmt. (n.13).

The government has never contended that Whitaker knew or had reason to believe that his transfer of firearms would result in the transfer to an individual who could not legally possess them. Instead, it contended that Whitaker had reason to believe the CI and the undercover officer were drug traffickers, JA 113, and because the transactions were clandestine in nature, JA 76, Whitaker therefore knew or had reason to know that the CI and the undercover officer intended to use or dispose of the firearm unlawfully. But the government presented no evidence that Whitaker had reason to believe the CI and the undercover officer were in the business of selling drugs at the time of the gun transactions, and the evidence refutes the government's contention that the sales were clandestine.

This Court has only held that a defendant had reason to believe the purchaser would use firearms illegally in drug transactions when the gun sale takes place *simultaneously with* a drug transaction. In *United States v. Pineda*, this Court recently held that a defendant had "'reason to believe' that the CI 'intended to use or dispose of the firearm[s] unlawfully,' since he was simultaneously selling cocaine to the CI with the understanding that the CI's intent was to distribute it to others." 770 F.3d 313, 322 (4th Cir. 2014). But here, Whitaker never simultaneously sold drugs and firearms, either to the CI or to the undercover officer. He sold only a very small amount of

11

heroin—.15 grams (150 milligrams)—to the CI over a week before the first gun transaction. While Whitaker discussed with the CI on October 4 how much to charge for heroin and the fact that the CI knew someone who sold prescription medications, nothing in that conversation indicated that the CI was regularly in the business of selling drugs. JA 45. In fact, if the CI had been in the drug business, Whitaker would have had no reason to explain to him how much to charge for heroin. Furthermore, no guns changed hands until eight days later, and even though the CI sat around Whitaker's parents' house conversing with Whitaker for over an hour and a half on October 12, JA 58, no evidence suggests that they discussed drugs that day. By that time, a reasonable person in Whitaker's position would have believed that the small amount of heroin he provided the CI had already been disposed of, and Whitaker had no reason to believe that the CI would be engaged in future drug transactions involving the firearms. Furthermore, the undercover officer never even discussed drugs with Whitaker until *after* Whitaker had sold him firearms. JA 68. Whitaker never sold drugs to the CI after October 4 and never sold drugs to the undercover officer at all. *Pineda* does not apply.

The government and the probation officer relied on this Court's unpublished decision in *United States v. Miller*, 529 F. App'x 331 (4th Cir. 2013), in arguing for application of the trafficking enhancement. JA 113, 138. That opinion, of course, is "without precedential value." *United States v. Davis*, 720 F.3d 215, 218 (4th Cir. 2013). But even if it were binding, it would not justify applying the trafficking enhancement

in this case. In *Miller*, the government presented even more evidence than existed in *Pineda* that the defendant knew or had reason to suspect that the buyers would dispose of the firearms unlawfully: for starters, Miller *admitted* that he had reason for such a suspicion. 529 F. App'x 331, 335-36 (4th Cir. 2013). In addition to that admission, Miller sold the gun buyers "large quantities of crack cocaine," the buyers paid an inflated price and told him they intended to sell the guns in other cities for a profit, and the transactions were "clandestine." *Id.* at 335.

None of those circumstances apply here. Whitaker never admitted that he had reason to suspect the purchasers would use or dispose of the firearms unlawfully. Furthermore, he sold only a small amount of heroin eight days before any gun transaction took place. There was no evidence that he sold guns at an inflated price or that the buyers intended to do so. And finally, the transactions were not "clandestine." The first transaction took place at the home of Whitaker's parents, while numerous people were coming and going, and the CI chatted with people in the house for approximately an hour and a half while he waited for someone to retrieve the second gun. JA 58-59. The second transaction took place at Whitaker's house, where he carried a bag containing four guns to the undercover agent's car. JA 49. Carrying four guns in a bag from one's house to a car hardly establishes a "clandestine" transaction; having only two hands, how else was he to transport four guns at once? Undertaking transactions at home in front of friends and family members or in a car parked outside the home are no more clandestine than the

13

average private sale of an item—that is hardly the conduct of someone who seeks to avoid detection. None of those circumstances gave Whitaker a reason to believe that the CI or the undercover officer intended to use or dispose of the firearms unlawfully.

Nor do other circumstances found by other courts of appeal to support the trafficking enhancement exist here. For example, Whitaker did not transfer firearms with obliterated serial numbers. *See United States v. Marceau*, 554 F.3d 24, 32 (1st Cir. 2009) (transferring guns with obliterated serial numbers can demonstrate a reason to believe that the transferee intends to use the firearm unlawfully). He did not "clandestinely" purchase firearms as a straw buyer for someone who was unwilling to purchase them himself and wished to keep his identity secret, nor was there any evidence that he received a payment above the retail cost of the firearms. *See United States v. Juarez*, 626 F.3d 246 (5th Cir. 2010) (clandestine nature of straw purchaser's dealings with gun purchaser, and fact that she was paid $200 over retail cost of guns, would give her reason to believe firearms were being purchased for an unlawful purchase); *United States v. Garcia*, 635 F.3d 472 (10th Cir. 2011) (straw purchaser clandestinely purchased AK-47 firearms for purchasers who funded her gun purchases). Whitaker also did not trade a firearm in exchange for drugs from a person whom he therefore knew to be a drug dealer. *See United States v. Pepper*, 747 F.3d 520, 525 (8th Cir. 2014) (defendant who traded a firearm to his own drug dealer in exchange for drugs had reason to believe drug dealer intended to use firearm unlawfully); *United States v. Freeman*, 640 F.3d 180, 189 (6th Cir. 2011) (same).

14

In sum, the evidence that Whitaker sold the CI five packets of heroin in a total amount of 150 milligrams eight days before any firearm transaction occurred simply does not support the trafficking enhancement under any court's interpretation of U.S.S.G. § 2K2.1(b)(5). While Whitaker discussed with the CI "about what to do with heroin, how much to charge" at the time he provided the heroin, JA 45, that discussion indicates that the CI was not knowledgeable about drug dealing and was not engaged in the drug business, and any reasonable person in Whitaker's position would have believed that the small amount of heroin he provided the CI had been used or otherwise disposed of eight days later when the first gun transaction occurred. After that single heroin transaction, Whitaker did not discuss drugs with the CI, and he never again provided the CI with drugs. Furthermore, the undercover agent brought up the subject of drugs only *after* completing the firearm transaction. Neither the CI nor the agent gave Whitaker reason to believe they were engaged in the drug business at the time he sold them guns. The circumstances of the gun transactions gave Whitaker no reason to believe, at the time the transactions took place, that the CI or the undercover agent intended to use or dispose of the firearms unlawfully. The district court clearly erred when it applied the four-level trafficking enhancement to Whitaker.

## <u>CONCLUSION</u>

This Court should vacate Jermaine Whitaker's sentence and remand his case to the district court for re-sentencing.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Whitaker respectfully requests oral argument, because this case presents significant issues regarding the procedural unreasonableness of his sentence.

DATED this 10th day of June, 2015.

Respectfully submitted,

Ross Hall Richardson,
Executive Director
Federal Defenders of
Western North Carolina, Inc.

<u>/s/Ann L. Hester</u>
Ann L. Hester
Assistant Federal Defender
129 W. Trade St., Suite 300
Charlotte, NC 28202
(704) 374-0720

ATTORNEYS FOR APPELLANT JERMAINE WHITAKER

16

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*4,004*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Garamond*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>June 10, 2015    </u>                    <u>/s/ Ann L. Hester            </u>
                                             *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 10th day of June, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy E. Ray
OFFICE OF THE U.S. ATTORNEY
100 Otis Street, Room 233
Asheville, North Carolina  28801
(828) 271-4661

*Counsel for Appellee*

I further certify that on this 10th day of June, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served on CD, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ Ann L. Hester
*Counsel for Appellant*